**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMY P.,[1] | : | Case No. 2:25-cv-01044 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed applications for Medicare-Qualified Government Employee (MQGE) benefits under Title II and Supplemental Security Income (SSI) under Title XVI in December 2022. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

Plaintiff asserts that she has been under a disability since June 1, 2020. At that time, she was thirty-one years old and was considered a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 9) is summarized in the ALJ's decision ("Decision," Doc. No. 9 at PageID 68-89), Plaintiff's Statement of Errors ("SE," Doc. No. 11), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides MQGE benefits and SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can

[2] The same legal standards apply to applications for Disability Insurance Benefits and Medicare benefits based on Medicare qualified government employment. *See* 42 U.S.C. § 426(b)(2)(C)(ii); S.S.A. POMS DI 25501.365, Established Onset for Medicare Qualified Government Employee (MQGE) Claims (last updated Jan. 10, 2023); *Dimas v. Kijakazi*, No. CV 20-0345 JHR, 2021 U.S. Dist. LEXIS 199931, 2021 WL 4847272, at *1 (D.N.M. Oct. 18, 2021). The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date.

Step 2: She has the severe impairments of obesity, fibromyalgia, asthma, depressive disorder, anxiety disorder, post-traumatic stress disorder, and personality disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[S]he can frequently climb ramps and stairs, stoop, crouch, kneel, balance, and crawl; must avoid concentrated exposure to extreme cold and hot temperatures, humidity, fumes, odors, dusts, gases, and poor ventilation; must avoid hazards such as unprotected heights and moving machinery; can understand, remember, and carry out simple instructions; can occasionally interact with the public in a non-public work setting; can occasionally interact with co-workers and supervisors; and can deal with occasional changes in the work setting."

She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 9 at PageID 74-84.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 84.)

### B. Plaintiff's Mental Limitations

#### 1. Christopher Ward, Ph.D.

Dr. Christopher Ward performed a consultative psychological evaluation on behalf of the Ohio Division of Disability Determination Services in February 2021. (AR, Doc. No. 9 at PageID 405-10.) In his report, Dr. Ward documented Plaintiff's subjective complaints and his mental status examination findings. (*Id.* at PageID 405-08.) Dr. Ward

concluded that his examination supported diagnoses of major depressive disorder and generalized anxiety disorder. (*Id.* at PageID 409.)

When asked to assess Plaintiff's mental abilities and limitations in the areas of understanding, carrying out, and remembering one-step and complex instructions, Dr. Ward stated:

> [Plaintiff's] performance on a brief word reasoning task was not suggestive of difficulty understanding instructions. Her performance on a brief short term memory task was not suggestive of difficulty remembering instructions. She did not have difficulty understanding and responding to questions posed .... She did not report problems learning work tasks.

(AR, Doc. No. 9 at PageID 409.)

With respect to the areas of sustaining concentration and persisting in work-related activity at a reasonable pace, Dr. Ward stated:

> [Plaintiff] ***appeared to have difficulty with attention and focus based on the need for regular repetition of questions***. She adequately completed tasks which assessed attention during the evaluation. Her level of energy, persistence and pace were adequate .... She reported a history of problems with concentration in work settings which negatively affected completion of work duties.

(AR, Doc. No. 9 at PageID 409 (emphasis added).)

In the area of maintaining effective social interactions, Dr. Ward stated:

> [Plaintiff] did not present with indications of mental health difficulties which would clearly impact interaction in work settings. She reported problems with limited social interaction and social withdrawal. She did not present with intellectual limitations which would impact her ability to understand and respond to supervisory feedback. She reported problems with anxiety in work settings which contributed to missed work.

(AR, Doc. No. 9 at PageID 410.)

Finally, with respect to Plaintiff's abilities and limitations in dealing with normal pressures in a competitive work setting, Dr. Ward stated:

> [Plaintiff] ***presented as emotionally overwhelmed when discussing current pressures which may impact her mood stability in a competitive work setting***. She reported problems managing pressure in daily activities which has contributed to avoidance completing daily tasks. Her presentation was not indicative of intellectual or cognitive limitations which would impact her ability to manage normal work pressures. She reported problems managing pressure in prior work settings which contributed to avoidance and missed work.

(AR, Doc. No. 9 at PageID 410 (emphasis added).)

**2. Andrea VanEstenberg, Ph.D.**

Dr. Andrea VanEstenberg performed a mental status examination via telehealth on behalf of the Ohio Division of Disability Determination Services in May 2023. (AR, Doc. No. 9 at PageID 550-55.) In her report, Dr. VanEstenberg documented Plaintiff's subjective complaints and her examination findings. (*Id.*) Dr. VanEstenberg concluded that her examination supported diagnoses of unspecified depressive disorder and generalized anxiety disorder. (*Id.* at PageID 553.)

With regard to Plaintiff's abilities and limitations in the areas of understanding, carrying out, and remembering instructions, Dr. VanEstenberg stated:

> [Plaintiff] would not appear to be limited in these regards given the appropriateness of her responses .... Also, she did not require extra elaboration to understand the items of inquiry during the evaluation. She is capable of comprehending and completing simple routine tasks. However, she may have difficulty with more complex tasks. [Her] level of cognitive functioning is not expected to cause difficulties with her abilities to understand and follow basic directives and routines.

(AR, Doc. No. 9 at PageID 554.)

In the areas of maintaining attention, concentration, persistence and pace, and performing simple tasks and multi-step tasks, Dr. VanEstenberg stated:

> She did not present limitations given that she could maintain focus across her appointment. In this regard, she was able to track the flow of conversation adequately across the interview. She reported the ability to engage in simple household tasks with mild impairment, including writing things down, requiring prompts, and making to-do lists.

(AR, Doc. No. 9 at PageID 554.)

In the area of responding appropriately to supervision and to coworkers in a work setting, Dr. VanEstenberg stated:

> [Plaintiff] made an unremarkable social presentation in this virtual setting. She listed some concerns with social difficulties with her anxiety.

(AR, Doc. No. 9 at PageID 554.)

Finally, in the area of responding appropriately to work pressures in a work setting, Dr. VanEstenberg stated:

> Given her current presentation in this evaluation setting and report of depression, anxiety, and inattention ... [Plaintiff's] ability to cope with the stress and pressures associated with day-to-day basic work activity would not be compromised in a solitary or isolated position with a simplistic, highly repetitive task.

(AR, Doc. No. 9 at PageID 555.)

**3. Raman Chahal, M.D.**

State agency psychiatric consultant Raman Chahal, MD reviewed the medical records and issued administrative findings on June 8, 2023. (AR, Doc. No. 9 at PageID 140-43.) Dr. Chahal concluded that Plaintiff's symptoms were "partially consistent" with the medical records. (*Id.* at PageID 143.) Dr. Chahal noted that Plaintiff's primary care

provider prescribed sertraline for her mood symptoms "in an ongoing and stable manner" and Xanax for airplane-related anxiety. (*Id.*) He noted that although Plaintiff reported being anxious when outside of her house or interacting with other people, she manages to function as the sole caregiver for her child. (*Id.*) Dr. Chahal also stated that the medical records do not show "any acute or gradual psychiatric decompensations requiring intensive interventions or a higher level of care." (*Id.*)

Dr. Chahal found that Plaintiff was mildly limited in the area of understanding, remembering, or applying information because she had average intelligence and had "no problems" on her mental status examinations. (AR, Doc. No. 9 at PageID 142, 146.) He also found that Plaintiff had only a mild limitation in the area of adapting or managing oneself and stated that she could "adapt to basic and routine workplace changes adequately." (*Id.* at PageID 142, 147.) Therefore, Dr. Chahal did not recommend the inclusion of any limitations in the RFC with respect to these areas of functioning.

Dr. Chahal did, however, find that Plaintiff was moderately limited in the area of interacting with others. (AR, Doc. No. 9 at PageID 142, 147.) Specifically, he found that Plaintiff is moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) Dr. Chahal opined that Plaintiff "can handle limited and non-demanding public contact. She can respond briefly but appropriately to coworkers and supervisors as needed. She can ask questions and request assistance as needed." (*Id.*)

Dr. Chahal also found that Plaintiff is moderately limited in the areas of concentrating, persisting, or maintaining pace. (AR, Doc. No. 9 at PageID 142, 147.) He identified moderate limitations in the abilities to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Chahal opined that Plaintiff can maintain concentration, persistence and pace "on routinized and repetitive, moderately detailed but not complex tasks for 2-hour periods and on simple tasks for extended periods." (*Id.*) He also opined that Plaintiff "can follow a routine schedule which does not require frequent changes." (*Id.*)

**4. Ken Lovko, Ph.D.**

State agency psychological consultant Ken Lovko, Ph.D. reviewed the record at the reconsideration level. (AR, Doc. No. 9 at PageID 153-59.) Dr. Lovko agreed with Dr. Chahal's assessment of Plaintiff's mental limitations and concluded that Dr. Chahal's "[i]nitial assessment is fully supported by and consistent with the totality of evidence in [the] file." (*Id.* at PageID 156.)

**C. Plaintiff's Physical Limitations**

**1. Phillip Swedberg, M.D.**

Dr. Phillip Swedberg performed a consultative examination on behalf of the Ohio Division of Disability Determination Services in January 2021. (AR, Doc. No. 9 at PageID 395-403.) Plaintiff told him that she suffered from low back pain on her right

side. Dr. Swedberg examined Plaintiff's muscle strength and grip strength and uniformly rated them at 5 out of 5. (*Id.* at PageID 395-99.) He stated that Plaintiff "ambulated with a steady gait without the use of ambulatory aids, and … is comfortable in both the sitting and supine positions." (*Id.* at PageID 401.) After examining Plaintiff's range of motion and ability to move, bend, flex, manipulate, stand and squat, Dr. Swedberg found that Plaintiff's abilities were all within normal limits. (*Id.* at PageID 401-02.)

Dr. Swedberg concluded that Plaintiff "appears capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (AR, Doc. No. 9 at PageID 402.) He also concluded that Plaintiff "has no difficulty reaching, grasping, and handling objects." (*Id.*)

**2. David Provaznik, D.O.**

Dr. David Provaznik performed a consultative examination on behalf of the Ohio Division of Disability Determination Services in May 2023. (AR, Doc. No. 9 at PageID 562-69.) Plaintiff complained of pain resulting from fibromyalgia and low back pain. (*Id.* at PageID 566.) Dr. Provaznik examined Plaintiff's muscle strength and grip strength and uniformly rated them at 5 out of 5. (*Id.* at PageID 562-565.) He found that the "physical exam reveals mild decrease in flexion of the lumbar spine, otherwise the exam was appropriate for her age." (*Id.* at PageID 569.)

**3. Carolyn Hildreth, M.D.**

State agency medical consultant Carolyn Hildreth, MD reviewed the medical records and issued administrative findings on June 12, 2023. (AR, Doc. No. 9 at PageID 131-33.) Dr. Hildreth stated that Plaintiff "has chronic back pain with decreased lumbar

[range of motion] with no evidence of a radiculopathy." (*Id.* at PageID 132.) Dr. Hildreth also stated that Plaintiff "has mild degenerative changes on x-rays" and "a normal gait and 5/5 muscle strength at the" consultative examination. (*Id.*)

Dr. Hildreth opined that Plaintiff is limited to lifting/carrying frequently up to 25 lbs. and occasionally up to 50 lbs. and is also limited to standing/walking/sitting up to 6 hours in an 8-hour workday. (AR, Doc. No. 9 at PageID 131-32.) Plaintiff should avoid concentrated exposure to extreme cold, extreme hot, humidity, fumes, odors, dust, gases, poor ventilation, etc. (*Id.* at PageID 132.)

#### 4. Elizabeth Das, M.D.

State agency medical consultant Elizabeth Das, M.D. reviewed the record at the reconsideration level. (AR, Doc. No. 9 at PageID 160-61.) Dr. Das agreed with Dr. Hildreth's proposed residual functional capacity and concluded that Dr. Hildreth's "[i]nitial assessment is fully supported by and consistent with the totality of evidence in [the] file." (*Id.* at PageID 161.)

### D. The ALJ's Decision

In her decision, the ALJ described Plaintiff's subjective complaints and reported difficulty with daily activities that she described during the June 2024 hearing. (Decision, Doc. No. 9 at PageID 77.) The ALJ also provided a detailed summary of Plaintiff's medical records and mental health treatment history. (*Id.* at PageID 77-80.) The ALJ summarized Dr. Ward's evaluation as follows:

> Dr. Christopher C. Ward, a consultative psychologist, evaluated [Plaintiff] [on] February 2, 2021 (Exhibit 4F). On exam, [Plaintiff] was cooperative, had normal speech and no thought abnormalities (Id.). Rapport was

> adequately established (Id.). Dr. Ward found [Plaintiff] had an adequate level of understanding (Id.). ***She presented as agitated and tearful and had tense vocalizations*** (Id.). He estimated [Plaintiff's] intellectual functioning falls within normal limits (Id.). [Plaintiff] had sufficient judgment (Id.). However, ***she had difficulty with attention and focus based on her need for regular repetition of questions*** (Id.). Dr. Ward diagnosed [Plaintiff] with major depressive disorder and generalized anxiety disorder (Id.).

(*Id.* at PageID 79 (emphasis added).)

The ALJ then concluded that Plaintiff's self-reported symptoms were not consistent with other evidence in the record, explaining:

> [Plaintiff] reported she has severe joint pain and has fibromyalgia. However, the exams of record show normal gait, negative straight leg raise, and normal use of upper extremities.... As well, there are no exam findings of fibromyalgia trigger points, and the treatment evidence shows minimal, conservative treatment for joint pain.
>
> [Plaintiff] reported she has severe asthma with daily attacks. As well, she stated she hallucinates while having asthma attacks. However, the evidence of record does not contain [a] pulmonary functioning study or positive lung x-rays. The claimant has not been hospitalized due to her asthma and is treated conservatively with inhalers and medication.... Further, there are no exam findings of impaired thought content or process.... She has not had any hospitalizations due to hallucinations.
>
> [Plaintiff] testified she has severe anxiety and depression that prevents her from working. Yet, she is the caregiver for her young son, and she performs household chores and shopping.... As well, she still drives, and she handles her finances.... [Plaintiff] receives conservative treatment for her mental impairments and there have been no mental health hospitalizations.

(Decision, Doc. No. 9 at PageID 79-80.)

Next, the ALJ addressed the medical opinion evidence relating to Plaintiff's physical impairments. (Decision, Doc. No. 9 at PageID 80-82.) The ALJ explained that she was not persuaded by the opinions of Dr. Hildreth and Dr. Das because they were inconsistent with certain objective findings (including wheezing, and positive lumbar x-

ray for mild degenerative changes), exam findings (decreased flexion of the hips with positive Trendelenburg, BMIs over 40, and hypermobility of the wrists) and Plaintiff's treatment history (prescribed muscle relaxer and Neurontin). (*Id.* at PageID 80.)

The ALJ explained that she was not persuaded by Dr. Swedberg's opinion because it was partially vague and was also inconsistent with Plaintiff's BMI, decreased flexion of the hips, decreased range of motion of the back, wheezing, hypermobility of the wrists, history of lung nodules, and a treatment history that included Neurontin and muscle relaxers. (Decision, Doc. No. 9 at PageID 80-81.)

The ALJ did not consider Dr. Provaznik to have provided a medical opinion because he "did not provide specific functioning abilities for" Plaintiff, although she did find his exam findings to be persuasive. (Decision, Doc. No. 9 at PageID 80.)

With regard to Plaintiff's mental impairments, the ALJ was persuaded by the findings of the state agency psychological consultants because they were supported by the evidence they cited and consistent with other evidence in the record. (Decision, Doc. No. 9 at PageID 81.) However, the ALJ found Plaintiff's abilities to be more limited than these consultants opined, and also "used vocationally relevant terms to formulate the [RFC]." (*Id.*) The ALJ was also persuaded by the opinion of consultative psychologist Dr. Van Estenberg but "used vocationally relevant terms to formulate the [RFC]." (*Id.*)

It appears that the ALJ did not consider Dr. Ward to have provided a medical opinion because her decision did not consider the persuasiveness of his statements. However, the ALJ ***did*** quote or paraphrase some of Dr. Ward's statements, which she referred to as objective findings, when discussing the opinions of Drs. Chahal and Lovko:

> Drs. Raman Chahal and Ken Lovko, state agency psychologists, opined the claimant can maintain concentration, persistence, and pace on routine and repetitive moderately detailed, but no complex, tasks for two hour periods and on simple tasks for extended periods … and she can follow a routine schedule with [sic] does not require frequent changes…. Further, they found the claimant can handle limited and non-demanding public contact; respond briefly but appropriately to co-workers and supervisors as needed; ask questions and request assistance as needed; and adapt to basic and routine workplace changes adequately. The undersigned finds their opinions persuasive because they are supported with references to objective findings of anxious mood and markedly flat affect…. ***As well, the opinion is consistent with the objective findings of agitation, tearfulness, tense vocalizations, and difficulty with attention and focus based on her need for regular repetition of questions***….

(Decision, Doc. No. 9 at PageID 81 (emphasis added).)

The ALJ explained why she included certain limitations in the RFC:

> [Plaintiff's] exam findings of decreased forward flexion of the lumbar spine, decreases in sinus flexion to her hips to 70 degrees with a positive Trendelenburger support the finding of light range of work with frequent climbing ramps and stairs, stooping, crouching, kneeling, balancing, and crawling…. As well, [Plaintiff] needs to avoid concentrated exposure to extreme temperatures and avoid all exposure to hazards such as unprotected heights and moving machinery.
>
> The medical evidence shows [Plaintiff] is diagnosed with mild intermittent asthma and prescribed inhalers…. She has a history of pulmonary nodules…. The exams have shown normal lungs to wheezing…. Dr. Provaznik found the claimant had normal chest and cardio exams…. Based on the findings of wheezing and history of pulmonary nodules, the claimant needs to avoid extreme temperatures, fumes, odors, dusts, gases, and poor ventilation.
>
> The exams of record show the claimant stands 5'2" tall and her BMIs have ranged between 36.95 and 45.36…. Dr. Provaznik noted in May 2023 that the claimant weighed 232 pounds…. The claimant tried weight loss medication.... The findings of obesity support the residual functional capacity findings of frequently climbing ramps and stairs and need to avoid all exposure to unprotected heights and moving machinery.

(Decision, Doc. No. 9 at PageID 78.) The ALJ also explained her inclusion of certain mental limitations in the RFC:

> The findings of anxious and/or depressed moods, agitation, tearfulness, and tense vocalizations support the residual functional capacity findings that she can occasionally interact with public in a non-public work setting; occasionally interact with coworkers and supervisors; and deal with occasional changes in the work setting…. As well, exam findings of difficulty with attention and focus based on her need for regular repetition of questions is [sic] consistent with the ability to understand, remember, and carry out simple instructions.

(*Id.* at PageID 79.)

## IV. LAW AND ANALYSIS

### A. Plaintiff's Assignments Of Error

Plaintiff asserts two assignments of error. (SE, Doc. No. 11 at PageID 1352-58.) First, she argues that the ALJ erroneously failed to evaluate the opinion of consultative psychologist Dr. Ward "despite the requirement that she evaluate every opinion before her." (*Id.* at PageID 1352-54.) Second, Plaintiff argues that "[t]he ALJ improperly relied on her own lay opinion in assessing the physical RFC after rejecting the opinions of record and failing to tether the limitations to substantial evidence." (*Id.* at PageID 1354.) For the reasons discussed below, the Court concludes that Plaintiff's asserted errors are not well-taken and therefore affirms the ALJ's decision.

### B. The ALJ Did Not Reversibly Err When Considering Dr. Ward's Report, And Substantial Evidence Supports the Mental Limitations in the RFC

Plaintiff argues that the ALJ erred by failing to evaluate Dr. Ward's opinion when formulating the RFC, even though she summarized his opinion elsewhere in the Decision.

(SE, Doc. No. 11 at PageID 1354.) Plaintiff contends that this alleged error was harmful "because Dr. Ward's opinion conflicted with the ALJ's RFC finding that Plaintiff could perform even simple work with occasional interaction and occasional changes in the work setting." (*Id.*) According to Plaintiff: "[T]he RFC was not based on substantial evidence, no meaningful review can be conducted, and remand is required." (*Id.*)

**1. Applicable law.**

ALJs must analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c. A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether she has one or more impairment-related limitations or restrictions in these abilities:

> (i) Your ability to perform physical demands of work abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

ALJs must also explain how they considered the supportability and consistency of medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(c).

No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 U.S. Dist. LEXIS 96117, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal quotations and citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id.* For example, an ALJ is not required "to use the terms 'consistency' or 'supportability' to fulfill her obligation to consider those factors." *Vieira v. Bisignano*, No. 1:25-cv-12943, 2026 WL 2099031, 2026 U.S. Dist. LEXIS 161155, *17 (D. Mass. July 21, 2026).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (internal quotations and citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted).

**2. The ALJ did not reversibly err when considering Dr. Ward's report.**

Plaintiff argues that the ALJ reversibly erred by failing to analyze Dr. Ward's statements as a medical opinion. Before addressing that argument, it is necessary to identify and provide context for Dr. Ward's purported medical opinion.

Dr. Ward identified no limitations in the areas of understanding, carrying out, or remembering one-step and complex instructions. (AR, Doc. No. 9 at PageID 409.) In the areas of sustaining concentration, persistence and pace, Dr. Ward identified no limitations with respect to completing tasks, energy level, persistence, or pace. (*Id.*) In the area of maintaining effective social action, Dr. Ward identified no mental health difficulties or intellectual limitations that would clearly impact Plaintiff's ability to interact with others, including supervisors. (*Id.*) Finally, Dr. Ward stated that Plaintiff's "presentation was not indicative of intellectual or cognitive limitations which would impact her ability to manage normal work pressures" in a competitive work setting. (*Id.*)

Dr. Ward's purported opinion, therefore, is limited to two ambiguous statements. First, Dr. Ward stated that Plaintiff "appeared to have difficulty with attention and focus based on the need for regular repetition of questions," ***and*** simultaneously stated that "[s]he adequately completed tasks which assessed attention during the evaluation." (AR, Doc. No. 9 at PageID 409.) Second, Dr. Ward stated that Plaintiff "presented as emotionally overwhelmed when discussing current pressures which may impact her mood stability in a competitive work setting," ***and*** simultaneously stated that "[h]er presentation was not indicative of intellectual or cognitive limitations which would impact her ability to manage normal work pressures." (*Id.*)

The Court concludes that Dr. Ward did not offer a "medical opinion" because his vague and possibly contradictory statements did not address what Plaintiff "can still do despite [her] impairment(s)" or whether Plaintiff has impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2); *see Raymond R. v. Comm'r of Soc. Sec.*, No.

1:21-cv-539, 2022 U.S. Dist. LEXIS 90406, 2022 WL 1590817, at *8 (S.D. Ohio May 19, 2022), *report and rec. adopted*, No. 1:21-cv-539, 2022 U.S. Dist. LEXIS 133967, 2022 WL 2965289 (S.D. Ohio July 27, 2022) (finding no error in the ALJ's failure to address a statement from a physician's assistant that "fail[ed] to identify what plaintiff 'can still do despite [his] impairments' and whether plaintiff has 'one or more impairment-related limitations or restrictions'") (collecting cases).

Instead, the Court concludes that Dr. Ward's statements are "clinical findings" that constitute "other medical evidence." 20 C.F.R. § 404.1513(a)(3). This conclusion is consistent with the ALJ's decision to treat Dr. Ward's statements as objective findings and address them in her discussion of the opinions of Drs. Chahal and Lovko.[3] (Decision, Doc. No. 9 at PageID 81.) Contrary to Plaintiff's argument, the ALJ did not ignore Dr. Ward's statements when formulating the RFC. She also did not err by failing to construe them as a medical opinion.

Moreover, even assuming that Dr. Ward's statements constitute a medical opinion, Defendant argues that the alleged error is harmless because those statements "do not propose any specific functional limitations[,] thus, making them patently deficient." (Mem. In Opp., Doc. No. 12 at PageID 1360.) This Court agrees. The Sixth Circuit has held that "vague and unhelpful" medical opinions are "patently deficient and could not have been credited by the Commissioner." *Dollinger v. Comm'r of Soc. Sec.*, 2023 WL

[3] Specifically, the ALJ referenced Dr. Ward's statement that Plaintiff had "difficulty with attention and focus based on her need for regular repetition of questions." (*Id.*; *cf.* AR, Doc. No. 9 at PageID 409.) The ALJ also referenced Dr. Ward's statement that Plaintiff "presented as agitated and tearful.... [and] with indications of anxiety as evidenced by tense vocalizations." (Decision, Doc. No. 9 at PageID 81; *cf.* AR, Doc. No. 9 at PageID 408.)

1777386, 2023 U.S. App. LEXIS 2950, at *10 (6th Cir. Feb. 6, 2023) (collecting cases). This rule applies here, as the statements cited by Plaintiff appear to be at least somewhat contradicted by statements that Plaintiff's abilities in those areas were not limited.

For these reasons, the Court concludes both that the ALJ did not err at all, and that she did not reversibly err, in her consideration of Dr. Ward's report.

**3. The mental limitations in the RFC are supported by substantial evidence.**

Plaintiff also challenges the ALJ's "RFC finding that Plaintiff could perform even simple work with occasional interaction and occasional changes in the work setting," arguing that it conflicts with Dr. Ward's report. (SSE, Doc. No. 11 at PageID 1354.)

The Court disagrees with the premise of Plaintiff's argument. Dr. Ward did not conclude that Plaintiff cannot perform simple work, have occasional interactions, or tolerate occasional changes. (*See* AR, Doc. No. 9 at PageID 409-10.) Dr. Ward identified no limitations in Plaintiff's ability to understand, carry out and remember instructions. (*Id.*) Although Plaintiff "appeared to have difficulty with attention and focus," Dr. Ward found that she "adequately completed tasks which assessed attention" and had adequate levels of energy, persistence and pace. (*Id.*) Dr. Ward observed no "indications of mental health difficulties which would clearly impact interaction in work settings," and Plaintiff "did not present with intellectual limitations which would impact her ability to understand and respond to supervisory feedback." (*Id.*) Finally, although Plaintiff "presented as emotionally overwhelmed when discussing current pressures which may impact her mood stability in a competitive work setting," Dr. Ward also stated that "[h]er

presentation was not indicative of intellectual or cognitive limitations which would impact her ability to manage normal work pressures." (*Id.*) Thus, there is no basis for finding that the challenged RFC finding conflicts with Dr. Ward's report.

Moreover, the Court finds that the mental limitations in the RFC are supported by substantial evidence. Among other things, those limitations are supported by the opinions of Drs. Chahal and Lovko, which the Plaintiff has not challenged in this appeal.

Accordingly, for all of the reasons stated above, the Court finds that Plaintiff's first assignment of error is not well-taken.

### C. The ALJ Was Not Required to Develop the Record to Obtain Medical Opinion Evidence Relating to Plaintiff's Physical Impairments.

Relying on the fact that the ALJ found the medical opinions relating to Plaintiff's physical impairments to be unpersuasive, Plaintiff contends that the ALJ failed to build a logical bridge between the evidence and her conclusions. (SE, Doc. No. 11 at PageID 1355-56.) Plaintiff asserts that "because there was no opinion evidence left to rely on after the ALJ rejected the opinions that were available to her, the ALJ should have developed the record for additional opinion evidence." (*Id.* at PageID 1356.) Plaintiff argues that by failing to do so, the ALJ erred because she "rel[ied] upon her lay opinion" and made "medical judgments about a claimant's functional abilities by interpreting raw medical data." (*Id.* at PageID 1357-58 (citing *Timothy R. J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-216, 2023 U.S. Dist. LEXIS 33727, 2023 WL 2258524, at *3 (S.D. Ohio Feb. 28, 2023); *Oaks v. Astrue*, No. 5:10CV2054, 2012 U.S. Dist. LEXIS 25152, 2012 WL 646152, at *11 (N.D. Ohio Jan. 17, 2012), *report and rec. adopted sub nom. Oaks v.*

*Comm'r of Soc. Sec.*, No. 5:10 CV 2054, 2012 U.S. Dist. LEXIS 25647, 2012 WL 646211 (N.D. Ohio Feb. 28, 2012); *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 909 (N.D. Ohio 2008)).)

Defendant responds by pointing out that "the ALJ alone is responsible for determining a Plaintiff's RFC." (Mem. In Opp., Doc. No. 12 at PageID 1361 (citing 20 C.F.R. § 404.1546(c)).) Defendant cites two cases in which the courts did not require ALJs to obtain medical opinions that supported their RFCs. (*Id.* at PageID 1361 (citing *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018); *Naddra v. Comm'r of Soc. Sec.*, No. 1:16-CV-340, 2016 U.S. Dist. LEXIS 185512, 2016 WL 11268204, at *8 (S.D. Ohio Dec. 22, 2016), *report and rec. adopted*, No. 1:16-CV-340, 2017 U.S. Dist. LEXIS 49624, 2017 WL 1194708 (S.D. Ohio Mar. 31, 2017)).) Defendant also argues that the Sixth Circuit only requires ALJs to develop the record in circumstances that do not apply here. (*Id.* at PageID 1363 (citing *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008); *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).)

The Court agrees with Defendant. "The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)); *accord Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations

and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). None of these regulations require the ALJ to find that a medical opinion, as opposed to other evidence in the record, supports each component and limitation of the RFC. And the Sixth Circuit has declined to impose such a requirement. *E.g., Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source).[4]

For all of these reasons, the ALJ's decision shall be affirmed.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. No. 11) is OVERRULED;
2. The Court AFFIRMS the Commissioner's non-disability determination; and
3. The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

[4] Because the Court agrees that no medical opinion is required to support an RFC, it does not reach Defendant's alternative argument that Plaintiff's assigned error fails because the ALJ "set forth an RFC more restrictive than any medical source opined." (Mem. In Opp., Doc. No. 12 at PageID 1362.)